IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KASTIEL H., by and through his | : | |
| Parents, JADE S. and QUINCY H., and | : | Civil Action |
| JADE S. and QUINCY H. individually | : | |
| of Carbondale, Pa. 18407 | : | |
| | : | No. |
| | : | |
| Plaintiffs | : | |
| v. | : | Jury Trial Demanded |
| | : | |
| CARBONDALE AREA SCHOOL | : | |
| DISTRICT | : | |
| 101 Brooklyn Street | : | |
| Carbondale, Pa. 18407 | : | |
| | : | |
| Defendant | : | |

## **COMPLAINT**

### I.   **Preliminary Statement**

1.      This action is brought by Kastiel H. ("Kastiel") and his Parents, Jade S. and Quincy H. (collectively, "Plaintiffs" or the "Family"). Kastiel is a five-year-old with significant disabilities including Autism, Attention Deficit Hyperactivity Disorder, and Developmental Delay in Speech. Kastiel resides in the Carbondale Area School District ("District"), which at all relevant times knew of Kastiel's disabilities.

2.      With deliberate indifference to Kastiel's rights as a student with a disability, the Carbondale Area School District ("District"), due to his disabilities, denied him equal opportunity to attend and participate in its pre-kindergarten program, which is free and open to all children who reside in the District. The District forced Kastiel to eat breakfast in isolation and forced his Parents to pick him up from school at 11 o'clock in the morning every day, while permitting children without disabilities to attend the pre-kindergarten program for a full day.

1

3.    On April 4, 2022, Parents filed a Due Process Complaint with the Office for Dispute Resolution seeking an order for the District to permit Kastiel to attend and participate for full days in the District's pre-kindergarten program like his same-aged peers in the District; compensatory damages for the District's violations of Section 504; and reasonable attorneys' fees and costs.

4.    On June 7, 2022,[1] a Pennsylvania administrative Hearing Officer dismissed Parents' Due Process Complaint because he found that the Office for Dispute Resolution lacks jurisdiction to adjudicate the issue.

5.    Plaintiffs file the instant action to: (a) appeal the incorrect dismissal of the Due Process Complaint; or, in the alternative, (b) present claims under Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, and the American with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq*. relating to the District's clear disability-based discrimination against Kastiel in the pre-kindergarten program.

II.    **Procedural History**

6.    On April 4, 2022, the Family filed an administrative Due Process Complaint seeking an order for the District to permit Kastiel to attend and participate for full days in the District's pre-kindergarten program like his same-aged peers in the District; compensatory damages for the District's violations of Section 504; and reasonable attorneys' fees and costs.

7.    In its Answer to the Due Process Complaint, the District raised affirmative defenses.

8.    Pursuant to pre-hearing communications with counsel for the Parties, the Pennsylvania Hearing Officer, Brian Ford, construed the totality of the District's responses as if they were

---

[1] The original order was incorrectly dated May 7, 2022. The Hearing Officer issued a corrected order with the June 7, 2022 date.

a motion to dismiss for lack of jurisdiction.

9.     On June 7, 2022, the Hearing Officer dismissed the Parents' Complaint for lack of jurisdiction.

10.     The Hearing Officer erred in determining that he lacked authority to hear Parents' Section 504 discrimination claim.

### III.     **Standard of Review**

11.     The standard of review for Section 504 and ADA claims is de novo. *K.N. v. Glouster City Bd. Of Edu.*, 379 F.Supp.3d 334, 344 (D.N.J 2019) (*citing T.F. v. Fox Chapel Area Sch. Dist.*, 589 F.App'x 594, 598 (3d Cir. 2014)). This differs from Individuals with Disabilities Education Act ("IDEA") claims, 20 U.S.C. § 1400 *et. seq*, which receive modified de novo review. *Id.*

12.     After fully considering the record, this Court should reverse the incorrect Decision of the Hearing Officer to dismiss Parents' Due Process Complaint; alternatively, this Court should assume jurisdiction over Plaintiffs' Section 504 and ADA claims and, after a jury trial, award appropriate relief to the Family for the District's disability-based discrimination along with reasonable attorneys' fees and costs.

### IV.     **Parties**

13.     Kastiel was born in 2016. He has resided in the District with Jade S. and Quincy H., his parents, at all relevant times.

14.     Kastiel is a Protected Handicapped Student under Section 504, 29 U.S.C. § 794.

15.     He is a qualified individual with a disability under the ADA, 42 U.S.C. § 12131 *et seq*.

16.     Jade S. is Kastiel's mother. Quincy H. is Kastiel's father. At all relevant times, they

have resided within the District.

17.     The Carbondale Area School District is located at 101 Brooklyn Street, Carbondale, Pennsylvania. On information and belief, the District is the recipient of several sources of federal funds and is an educational agency designated by Pennsylvania law and the Pennsylvania Department of Education for the provision of educational services to individuals residing within its boundaries including those mandated under IDEA and Section 504. 22 Pa. Code Chapters 14 and 15; 24 P.S. Chapter 13.

**V.     Jurisdiction and Venue**

18.     This Court has original jurisdiction over this appeal pursuant to 28 U.S.C. § 1331 because this case raises federal questions under the Section 504 and the ADA.

19.     Plaintiff has exhausted administrative remedies where required under 20 U.S.C. § 1415(i), having timely pursued a special education due process hearing. 20 U.S.C. § 1415(i)(2)(A); *Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266 (3d Cir. 2014).

20.     The Family's claims and remedies are authorized by 29 U.S.C. § 794(a); and 28 U.S.C. §§ 2201 and 2202, providing for declaratory and any further relief deemed necessary and proper.

21.     All of the Defendant's complained-of actions have taken place within the jurisdiction of the United States District Court for the Middle District of Pennsylvania. Venue is appropriate in this District pursuant to 28 U.S.C. § 1391.

**VI.    Additional Facts Supporting Liability**

22.     Kastiel began attending the District's pre-kindergarten program on August 30, 2021.

23.     The District's pre-kindergarten program is free and available to appropriately-aged

4

District residents.

24.     Upon information and belief, the pre-kindergarten program is a program of public education that is offered in the District.

25.     On August 31, 2021, Kastiel's parent was unexpectedly called into a meeting with the District's Principal, her secretary, and another person that the parent was not able to identify.

26.     At the meeting, the District advised Kastiel's parent that Kastiel would only be permitted to attend the District's pre-kindergarten program for less than half days because he is too aggressive on the playground, and they need to protect the other children.

27.     During the relevant period, Kastiel had an Individualized Education Program ("IEP") from the Northeast Intermediate Unit ("NEIU").

28.     The IEP provided services to Kastiel in the pre-kindergarten program operated by and located in the District.

29.     The District knew of Kastiel's disabilities and of his IEP.

30.     After the discussion with the Principal, Kastiel's parent went home, called the school, and asked to speak to the District's school psychologist about how Kastiel's special education needs could be met in the pre-kindergarten program.

31.     On the same day, August 31, 2021, the District's school psychologist told the parent that she cannot work with him because he is in pre-kindergarten, and she is not permitted to work with him until he is in kindergarten.

32.     The District's school psychologist then advised Kastiel's parent that he is "a danger and a full-time job."

33.     Since his third day of school, Kastiel has been excluded from going to the District's pre-kindergarten program that is available to all other same-aged students in the District after

5

eleven o'clock in the morning due to his disabilities.

34.     The District refused to offer any accommodations and services to Kastiel and, instead, prohibited his attendance for more than a few hours each day.

35.     During the 2021-22 school year, Parents were required to pick Kastiel up from the full-day program at eleven o'clock in the morning.

36.     The District admitted to the Parents that he is not permitted to attend a full day due to his social, emotional, and behavioral needs that are related to his disabilities.

37.     The District further denied Kastiel participation in breakfast with his pre-kindergarten aged and forced him to eat his breakfast alone.

38.     While Kastiel was attending the pre-kindergarten program for the portion of the day he was permitted to attend, Kastiel would come home from school and make self-deprecating statements such as, "Mommy, I am a bad kid" and "no one likes me."

39.     Kastiel's mother would constantly have to reassure him that he was not a "bad kid."

40.     Kastiel would also physically fight with his mother including pushing and shoving her when she would have to pick him up early from the District's pre-kindergarten program.

41.     When Kastiel would come home from the pre-kindergarten program, he would sit under a blanket and play sad music on his tablet.

42.     As a direct result of the District's discrimination, Kastiel attended individual therapy at the Aaron Center to address his feelings of depression and inadequacy due to his exclusion.

## VII.   **Statutory Authority**

43.     Section 504 provides protection for children with disabilities by prohibiting discrimination against handicapped persons in federally funded programs such as public education. 29 U.S.C. § 794.

44.     Under Section 504, a "handicapped person" is defined as "any person who has a physical or mental impairment which substantially limits one or more major life activities." 34 C.F.R. § 104.3. The term "physical or mental impairment" is defined as "any physical or psychological disorder such as . . . emotional or mental illness and specific learning disabilities." *Id.* The term "major life activities" is defined as "functions such as caring for one's self . . . learning, and working." *Id.*

45.     The Commonwealth of Pennsylvania developed implementing regulations related to Section 504. 22 Pa. Code Chapter 15.

46.     Pursuant to 22 Pa. Code § 15.10, "an eligible or noneligible student . . . may . . . raise claims regarding denial of access, equal treatment or discrimination based on handicap."

47.     Chapter 15 further states, "[a] student filing a claim of discrimination need not exhaust the procedures in this chapter prior to initiating a court action under Section 504." *Id.*

48.     The procedural safeguards in 22 Pa. Code § 15.8 include a formal due process hearing. 22 Pa. Code § 15.8(d).

49.     In the Commonwealth of Pennsylvania, the Office for Dispute Resolution conducts formal due process hearings pursuant to 22 Pa. Code § 15.8(d).

50.     Administrative hearing officers from the Office for Dispute Resolution have frequently decided issues of discrimination under Section 504. *M.T. v. Octorara Area Sch. Dist.*, ODR Number 24265-2021 (2021) (finding discrimination against the student on the basis of the student's disabilities by treating the student with deliberate indifference); *A.A. v. Lower Merion Sch. Dist.*, ODR Numbers 23603-1920, 23621-1920 (2020) (finding deliberate indifference and disability-based discrimination); *L.M. v. Ephrata Area Sch. Dist.*, ODR Number 25695-21-22 (2022) (considering disability-based discrimination under Section 504).

7

51.     Parents of a child with disabilities need not exhaust IDEA administrative remedies before bringing a Section 504 claim in court when the "gravamen of the . . . suit is something other than" a Free Appropriate Public Education ("FAPE") claim. *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 137 S. Ct. 743, 748 (2017).

52.     The Supreme Court directed lower courts to consider two hypothetical questions to determine the gravamen: "First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was <u>not</u> a school—say, a public theater or library? And second, could an <u>adult</u> at the school—say, an employee or visitor—have pressed essentially the same grievance?" *Wellman v. Butler Area Sch. Dist.*, 877 F.3d 125, 132 (3d Cir. 2017) (*quoting Fry*, 137 S. Ct. at 756) (emphasis in original). "If the answer to both of these questions is yes, then it is unlikely that the complaint is about the denial of a FAPE. By contrast, when the answer to both of these questions is no, then the complaint probably concerns a FAPE." *Id.* (internal citations omitted).

53.     The Third Circuit has dismissed 504 discrimination claims brought directly to district courts due to a lack of exhaustion at the administrative level. *Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266 (3d Cir. 2014); *Wellman*, 877 F.3d at 135 (remanding for dismissal with prejudice when "both the entire pleading and each individual count show that Wellman seeks relief because the School District failed to provide him with academic accommodations that would have allowed him to succeed and remain enrolled in the school despite his injury" and plaintiff had already released FAPE claims); *F. S. by & through Scarano v. Crestwood Sch. Dist.*, 2021 WL 6101356, at *2, *3 (3d Cir. 2021) (dismissing plaintiff's Section 504 claims for lack of exhaustion when plaintiff alleged that a school district failed to accommodate plaintiff's participation in the cheerleading program); *see also Sch. Dist. Of Philadelphia v. Post*, 2017 WL 3676970, at *8 (E.D.

Pa. 2017) (parents' claims relating to retaliation that arose after a due process hearing must first go through the administrative process before being raised in district court).

54.     An individual with a disability who is otherwise qualified to participate in a school program and was denied the benefits of the program or otherwise discriminated against based on disability, has been subject to disability discrimination in violation of Section 504 protections. 34 C.F.R. § 104.4; *S.H. v. Lower Merion School District*, 729 F. 3d 248 (3d Cir. 2013). A party who claims discrimination in violation of the obligations of Section 504 must show deliberate indifference on the part of the defendant in its purported acts/omissions. *Id.*

55.     "[T]he same standards govern both [Section 504] and ADA claims. *Chambers ex rel. Chambers v. Sch. Dist. Of Philadelphia Bd Of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009); *Patrick B. v. Paradise Protectory and Agr. School, Inc.*, 2012 WL 3233036, at *4 (M.D. Pa. Aug. 6, 2012).

56.     The ADA's causation standard is lower than Section 504, and does not require the disability to be the "sole cause" of the discrimination or denial of benefits, rather "the ADA only requires 'but-for' causation," i.e. but for the disability, there would be no discrimination or denial of benefits. *Furgess v. Pa. Dep't. Of Corr.*, 933 F.3d 285, 291 n.25 (3d Cir. 2019).

57.     A court may award monetary damages to an aggrieved parent or child with disabilities who brings a claim under Section 504 or the ADA. *A.W. v. Jersey City Public Schools*, 486 F.3d 791, 804 (3d Cir. 2007); *see also Patrick B*, 2012 WL at *4 ("compensatory damages, while not available under the IDEA, are available under Section 504 and the ADA").

58.     Both Section 504 and the ADA permit recovery of reasonable attorney's fees by plaintiffs who are "prevailing parties" in an action or proceeding under those statutes. 42 U.S.C. § 12205; 29 U.S.C. § 794(b); *see also Andrew M. v. Delaware County Office of Mental Health/Mental Retardation*, 2005 WL 783070 at *15 (E.D. Pa. 2005) (attorneys' fees are recoverable under

9

Section 504); *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311 (3d Cir. 2006) (attorneys' fees are recoverable under the ADA).

**VIII.   Hearing Officer Errors**

59.   The Hearing Officer erroneously determined that the Office for Dispute Resolution lacks jurisdiction to adjudicate Parents' Section 504 claim.

60.   The Hearing Officer incorrectly determined that Parents did not raise a Chapter 15 claim:

> Chapter 15 concerns the regular education accommodations that a protected student needs to access a school's programs. Chapter 15 also concerns the procedural mechanisms by which schools and parents secure those accommodations. Said differently, Chapter 15 is about the development, content, and implementation of Section 504 service agreements, and an individual student's entitlement thereto. The issue in the case falls beyond that scope.

June 7, 2022 Order at 8 (attached hereto as "Exhibit A").

61.   However, Chapter 15 expressly permits Plaintiffs to request a due process hearing for a Section 504 discrimination claim using its procedural safeguards provision.

62.   Additionally, the Hearing Officer misapplied *Fry* in determining the gravamen of Parents' claim. *See F. S. by & through Scarano, supra* (dismissing a substantially similar claim that a school district failed to accommodate student's participation in cheerleading due to a failure to exhaust administrative remedies).

63.   Parents sought, *inter alia*, an order for the District to permit Kastiel to fully attend and participate for full days in the District's pre-kindergarten program like his same-aged peers in the District.[2]

---

[2] Since Plaintiffs filed the Due Process Complaint, Kastiel is now a school-aged student attending kindergarten. Accordingly, Parents can no longer seek an order to permit him to attend the pre-kindergarten program. Notwithstanding, at the time of the Hearing Officer's dismissal, this relief would have been appropriate and necessary to uphold Kastiel's rights.

64.     Plaintiff expects to be the prevailing party in this proceeding and is therefore enti-

tled to an award of statutory attorneys' fees and costs for the present proceeding.

**IX.     <u>Alternative Claims Asserted</u>**

65.     In the alternative, if this Court determines that exhaustion is not required, Plaintiffs

assert the following claims.

**COUNT I – CLAIM FOR COMPENSATORY**
**<u>DAMAGES BASED UPON SECTION 504</u>**

66.     Plaintiffs incorporate by reference all preceding paragraphs.

67.     To state a claim under Section 504, a plaintiff must allege facts showing that: (1)

she is an "individual with a disability" as defined under the statute; (2) she is "otherwise qualified"

for participation in the program or the benefit denied; (3) the program receives "federal financial

assistance"; and (4) she was "excluded from the participation in," "denied the benefits of," or

"subjected to discrimination" in the program "solely by reason of her or his disability." *Nathanson*

*v. Med. Coll. of Pa.*, 926 F.2d 1368, 1380 (3d Cir. 1991).

68.     An individual with a disability who is otherwise qualified to participate in a school

program and was denied the benefits of the program or otherwise discriminated against based on

disability, has been subject to disability discrimination in violation of Section 504 protections.

34 C.F.R. § 104.4; *S.H. v. Lower Merion School District*, 729 F. 3d 248 (3d Cir. 2013). A party

that claims discrimination in violation of the obligations of Section 504 must show deliberate in-

difference on the part of the defendant in its purported acts/omissions. *Id.*

69.     Kastiel is disabled under Section 504 because he is a student with Autism, Attention

Deficit Hyperactivity Disorder, and Developmental Delay in Speech, which substantially limit one

or more of his major life activities, including learning, socializing, and regulating his emotions in

school.

70.     Kastiel was otherwise qualified to participate in the pre-kindergarten program run by the District.

71.     Upon information and belief, at all relevant times, the District received federal financial assistance from several sources.

72.     Kastiel was deprived of the equal benefits of his program, and otherwise subjected to discrimination, because of his disabilities.

73.     Defendant acted in bad faith, used gross misjudgment, and/or was deliberately indifferent to Kastiel's rights when it refused to make any accommodations for Kastiel's disabilities and denied him equal benefits due to his disability-related behaviors.

74.     The District excluded Kastiel from the pre-kindergarten program solely and expressly because of his disabilities.

75.     Kastiel was not the first and will not be the last child with Autism and behavioral needs who attends an educational program in the District. The District cannot choose which children receive an education and which do not solely on the basis of their disability or lack thereof.

76.     The discrimination was intentional and, because it was of a young child, insidious.

77.     As a result of these violations, Kastiel and his Parents suffered damages as described herein, including a loss of educational opportunities, financial losses, and physical ailments.

## COUNT II – CLAIM FOR COMPENSATORY
## DAMAGES BASED UPON THE ADA

78.     Plaintiffs incorporate by reference all preceding paragraphs.

79.     To prevail on a violation of the ADA, a plaintiff must allege and demonstrate that an individual (1) has a disability; (2) was otherwise qualified to participate in a school program; and (3) was denied the benefits of the program or was otherwise subject to discrimination because

of his disability. *C.G. v. Pennsylvania Dept. of Educ.*, 734 F.3d 229, 236 (3d Cir 2013).

80.    The requirements for a claim under Section 504 are largely the same as those under the ADA, except that the ADA precludes discrimination "by reason of" an individual's disability while Section 504 prohibits such conduct "solely by reason of" an individual's disability. *See* 29 U.S.C. § 794(a); 42 U.S.C. § 12132; *see also C.G.*, 734 F.3d at 236.

81.    Kastiel was deprived of the equal benefits of his program, and otherwise subjected to discrimination, because of his disability.

82.    Defendant acted in bad faith, used gross misjudgment, and/or was deliberately indifferent to Kastiel's rights.

83.    As a result of these violations, Kastiel and his Parents suffered damages as described herein, including loss of educational opportunities, financial losses, emotional trauma, anxiety, physical ailments, and pain and suffering.

## X.    Conclusion

WHEREFORE, the Plaintiffs respectfully requests that this Court:

1.    Assume jurisdiction over this action;

2.    Reverse the Hearing Officer's Decision to dismiss Plaintiffs' Due Process Complaint and remand for an administrative hearing;

3.    Alternatively, following a jury trial on Plaintiffs' claims for compensatory damages, award compensatory damages for the District's statutory violations;

4.    Order the Defendant to pay Plaintiffs their reasonable attorneys' fees and related costs for this action and for the due process proceeding;

5.    Declare the Defendant's actions and omissions to be violative Section 504,

the ADA, and Pennsylvania law and to constitute discrimination on the basis of disability pursuant

to Section 504 and the ADA; and

      6.     Grant such other relief as this Court deems proper.

      Respectfully submitted,

Jacqueline C. Lembeck, Esquire
PA ID No. 314535

Heather M. Hulse, Esquire
PA ID No. 164134

Dennis C. McAndrews, Esquire
PA ID No. 28012

McANDREWS, MEHALICK, CONNOLLY,
HULSE & RYAN, P.C.
30 Cassatt Avenue
Berwyn, PA 19312
(610) 648-9300 (phone)
(610) 648-0433 (fax)

Attorneys for Plaintiffs

14